STANLEY G. HILTON, CBN 65990
LAW OFFICES OF STANLEY G. HILTON
580 California Street, Suite 500
San Francisco, California 94104
Tel: (415) 439 4893, (415) 786-4821
Fax: (415) 439 4963
E Mail: 4561414@GMAIL.COM

Attorney for Plaintiffs

**ADR**

**FILED**
2007 OCT 12 P 3:31
RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

**E-FILING**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OPTIONS NATIONAL FERTILITY REGISTRY, a California Corporation, and _____ JESSICA and class of plaintiffs believed to be similarly situated (women egg donors whose eggs were allegedly given to unknown and unauthorized recipients via "egg sharing" without their informed consent, in violation of an existing legally binding contract)

Plaintiffs,

v.

THE AMERICAN SOCIETY FOR REPRODUCTIVE MEDICINE;
SOCIETY FOR ASSISTED REPRODUCTIVE TECHNOLOGY; DOES 1 THROUGH 102 (REGISTERED INFERTILITY PHYSICIANS) AND DOES 103 THROUGH 1500 (FERTILITY CLINICS AND ASSOCIATED PROFESSIONAL DEFENDANTS),

DEFENDANTS

No. **C07 05238**

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DECLARATORY RELIEF**

**CLASS ACTION**

**JURY TRIAL DEMANDED**

HRL

---

Complaint for Damages
OPTIONS VS. AMER SOC FOR REPRO MED, ET AL.                                      1

## INTRODUCTORY ALLEGATIONS

1.  Plaintiff, OPTIONS NATIONAL FERTILITY REGISTRY, a California Corporation ("OPTIONS"), a California Corporation, is a California C corporation headquartered in Orange County, California and formerly headquartered in Los Angeles County, California. OPTIONS was a national and international registry that maintained data pertaining to egg donation arrangements and facilitated and coordinated these arrangements and coordinated the peripheral aspects. OPTIONS was paid a fee by the registrants for their services.

2.  Plaintiffs ELICA, JESSICA and class of plaintiffs believed to be similarly situated is a group of women egg donors whose eggs were allegedly given to unknown and unauthorized recipients via an industry-wide practice allegedly known as "egg sharing" without their informed consent, and in violation of an existing legally binding contract.

3.  Defendant THE AMERICAN SOCIETY FOR REPRODUCTIVE MEDICINE ("ASRM") is an entity headquartered in Birmingham, Alabama and at all times mentioned herein has been, and still is, doing business—and represents doctors and clinics doing business--- in this federal district and in California, including San Francisco, San Mateo and Santa Clara counties, California), which had signed contracts with plaintiff OPTIONS (which was a member of ASRM) and with the other plaintiffs and defendants. It has sufficient contacts to be subject to personal jurisdiction in this court.

4.  Defendant SOCIETY FOR ASSISTED REPRODUCTIVE TECHNOLOGY (SART) is an "affiliate" of defendant ASRM and is an entity headquartered in Birmingham, Alabama, and at all times mentioned herein has been, and still is, doing business in this federal district and in California, including San Francisco, San Mateo and Santa Clara counties, California). It has sufficient contacts to be subject to personal jurisdiction in this court.

5.  Defendants DOES 1 THROUGH102 (REGISTERED INFERTILITY

PHYSICIANS) AND DOES 103 THROUGH 1500 (FERTILITY CLINICS AND ASSOCIATED PROFESSIONAL DEFENDANTS) are named as Doe defendants because Plaintiffs are ignorant of the true names and capacities of defendants sued herein as DOES inclusive, and plaintiffs therefore sue these defendants by such fictitious names. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believes and thereon allege that each of these fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that plaintiff's injuries as herein alleged were proximately caused by the aforementioned defendants.

6. Plaintiffs are informed and believe and thereon allege that at all times herein mentioned ASRM AND SART were the agents of each of the remaining defendants and, in doing the things hereinafter alleged, were acting within the course and scope of such agency and their own guidelines.

7. JURISDICTION is proper in this court because many of the acts mentioned herein occurred in this district and in San Francisco, San Mateo and Santa Clara counties, California, and because many of the defendants are doing business here and have adequate contacts for personal jurisdiction by this court over them. Plaintiffs also maintain there is DIVERSITY JURISDICTION because many of the defendants are headquartered in a state other than California while many of the plaintiffs are in California, and plaintiffs demand monetary damages in excess of $ 75,000. Plaintiffs also allege that there is ORIGINAL FEDERAL JURISDICTION in this case because certain federal statutes were involved and violated in the events herein described, including, *inter alia*, interstate commerce violations. California law and federal law should be applied to this case as jurisdiction and venue are properly in this forum.

8. VENUE is proper in this court because many of the acts mentioned herein occurred in this district and in San Francisco, San Mateo and Santa Clara counties, California, including San Francisco, California and Palo Alto, California, and because many of the defendants are doing business here and have adequate contacts for personal jurisdiction by this court over them.

9. JURY TRIAL DEMANDED: Plaintiffs demand a jury trial in this action.

10. INJUNCTIVE RELIEF DEMANDED: Plaintiffs request injunctive relief to enjoin defendants from sharing, transferring, selling or otherwise giving eggs ("egg sharing") of plaintiffs to any person or entity without the full informed consent of plaintiffs, and to order defendants to immediately turn over to plaintiffs all records in their possession, including but not limited to embryology reports and records, post-cycle reports and records, agreements, and all other documents showing and tracing the fate of all of the plaintiffs' eggs as designated in an "under seal" document to be provided at a later date.

11. DECLARATORY RELIEF DEMANDED: Plaintiffs request declaratory relief to declare the respective rights of the parties in this litigation, and to determine which defendant violated plaintiffs' legal rights.

12. STATUTE OF LIMITATIONS TOLLED FOR ALL CAUSES OF ACTION HEREIN: Although plaintiff OPTIONS filed for bankruptcy in 2005, the statute of limitations was tolled from the time of the bankruptcy filing until September 2007, i.e. until the bankruptcy trustee officially abandoned all of the claims and cases mentioned in this complaint, said abandonment of claims occurring on or about September 2007. In addition, the statute of limitations for all causes of action herein were tolled because of fraudulent concealment by defendants of their unauthorized and unconsented-to egg sharing and other activities mentioned in this complaint. Plaintiffs did not learn about this material breach of contract by defendants until on or about January 2005, due to fraudulent concealment by defendants and delayed discovery, and the statute of limitations has therefore been tolled.

### FIRST CAUSE OF ACTION: BREACH OF CONTRACT

13. The allegations of paragraphs 1 through 12 are realleged and incorporated herein by reference. This cause of action is pled against each and every defendant.

14. Commencing on or about 1992 and continuously through 2003, defendants entered into written and oral contracts, guidelines and representations with plaintiffs, according to which defendants agreed that they would not transfer, donate, sell, give or otherwise dispose of any eggs or embryos of the plaintiffs to anyone other than designated recipients specifically designated in the profile transfer requests signed by the doctors, and would not engage in any other form of "egg sharing," without the plaintiffs' written informed consent. Defendants agreed to honor the exclusivity of the arrangement for each of the procedures in question.

15. Plaintiffs are informed and believe that commencing on or about 1992 and continuing to the present day, defendants materially breached said contracts by allegedly engaging in egg sharing as a pervasive industry-wide practice, without obtaining the informed written consent of the plaintiffs at least 2 weeks prior to the egg retrieval according to ASRM and SART guidelines. In or about January 2005, a certain doctor testified at another trial that egg sharing is a widespread industry practice: infertility doctors are encouraged by ASRM and SART to participate in egg sharing, despite defendants' knowledge that this viloated the policies of OPTIONS. Plaintiff OPTIONS did not learn of this egg sharing practice until the doctor's testimony in January 2005, in which this doctor said such egg sharing without informed consent is "common" in the infertility industry and "encouraged" by defendants. Since that testimony, defendants have sought to cover up and conceal this practice of unauthorized egg sharing, by various *modus operandi*, and Plaintiffs are informed and believe that Defendants have kept inconsistent and incongruous written records of egg retrieval from plaintiffs, egg sharing, chain of custody of eggs and ultimate transmittal and disposition of said eggs. Many eggs retrieved from

plaintiffs have been unaccounted for, and some of the defendants' records (including post cycle reports, embryology reports and other documents) have been inconsistent and could not account for what had become of all of the follicles, eggs, and embryos of the plaintiffs, and did not satisfactorily explain what had become of them. This inconsistency and unexplained and frequent disappearance of donors' eggs strongly suggests a wide pattern and practice of unauthorized egg sharing by defendants, as well as a plan and pattern of concealment of such practices and cover up of illegal acts and what appears to be a major medical ethics scandal, as well as illegal acts. The pattern of brokering and performing unauthorized egg donation transactions is evidenced by the large number of discrepancies in the Post Cycle Reports of defendants, documenting irregularities and discrepancies in the number of eggs reported to have been retrieved, fertilized, transferred, frozen and/or disposed of,. Many eggs and embryos have been unaccounted for. Plaintiffs are informed and believe that defendants routinely transferred, sold, gave away and otherwise disposed of many of the plaintiffs' eggs without informing the plaintiffs to whom these eggs would be given, and without getting or even asking for plaintiffs' written consent. Plaintiffs are informed and believe that defendants ASRM and SART routinely encouraged the physician and clinic defendants to engage in unauthorized egg sharing without informed consent of plaintiffs, and the defendants altered, destroyed or otherwise spoilated evidence of the fates of the retrieved eggs. Plaintiffs are informed and believe that the defendants have divided the eggs they received from plaintiffs, without informed consent of plaintiffs, and gave and/or sold some of these eggs to unauthorized recipients without the knowledge or consent of plaintiffs, which plaintiffs had expressly restricted the use of their eggs to specifically designated recipients only. Plaintiffs are informed and believe that defendants have brokered unauthorized egg transfer or donation or sale arrangements without consent of plaintiffs, and in violation of their contracts with plaintiffs.

16. Plaintiffs did not learn about this material breach of contract by defendants until on or about 2005, due to fraudulent concealment by defendants and delayed discovery, and the statute of limitations has therefore been tolled.

Complaint for Damages
OPTIONS VS. AMER SOC FOR REPRO MED, ET AL.                                                    6

17. Plaintiffs duly performed all duties required of them under the terms of the contracts mentioned, and continue to abide by said contracts.

18. As a proximate result of the actions of defendants, and each of them, plaintiffs have been damaged in that they have suffered emotional distress upon learning that their eggs were—or may have been--- "shared" and given away and/or sold by defendants, to unknown and unauthorized recipients, without their informed consent, in violation of the known and existing legal contracts. Plaintiffs have suffered general damages of pain and suffering and loss of reputation as well as specific medical damages caused by this. The class of egg donor plaintiffs have feared, *inter alia,* that their offspring may have increased risk of unknowingly engaging in incestuous relationships because of the actions of defendants.

19. As a proximate result of the actions of defendants, and each of them, plaintiffs have been damaged in that OPTIONS has been driven out of business in 2003 and forced into bankruptcy in 2005, and has lost income in excess of $ 5 million because OPTIONS lost all of its referrals and lost revenues and lost doctors, donors and recipients and income.

20. Plaintiffs demand an award of reasonable attorney fees and costs per the contracts defendants registered physicians signed with OPTIONS.

21. There is no adequate remedy at law and irreparable damage will occur in the future unless injunctive relief is granted, banning unauthorized and unconsented egg sharing by defendants.

WHEREFORE RELIEF IS PRAYED FOR AS HEREINAFTER SET FORTH

**SECOND CAUSE OF ACTION: TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP**

22. The allegations of paragraphs 1 through 21 are realleged and incorporated herein by reference. This cause of action is pled against each and every defendant.

23. The actions of defendants, detailed above, constitute tortious interference with

Complaint for Damages
OPTIONS VS. AMER SOC FOR REPRO MED, ET AL.                                             7

contractual relationships between OPTIONS and many other doctors, clinics, donors and recipients, in that defendants knew and should have known that by their conduct of unauthorized egg sharing, they would be placing in jeopardy, OPTIONS' contractual relationships with various and sundry doctors, clinics, donors and recipients.

24. As a proximate result of the actions of defendants, and each of them, plaintiffs have been damaged in that they have suffered emotional distress upon learning that their eggs were—or may have been--- "shared" and given away and/or sold by defendants, to unknown and unauthorized recipients, without their informed consent, in violation of the known and existing legal contracts. Plaintiffs have suffered general damages of pain and suffering and loss of reputation as well as specific medical damages caused by this. The class of egg donor plaintiffs have feared, *inter alia*, that their offspring may have increased risk of unknowingly engaging in incestuous relationships because of the actions of defendants.

25. As a proximate result of the actions of defendants, and each of them, plaintiffs have been damaged in that OPTIONS has been driven out of business in 2003 and forced into bankruptcy in 2005, and has lost income in excess of $ 5 million because OPTIONS lost all of its referrals and lost revenues and lost doctors, donors and recipients and income.

26. Plaintiffs demand an award of reasonable attorney fees and costs per the contracts defendants registered physicians signed with OPTIONS.

27. There is no adequate remedy at law and irreparable damage will occur in the future unless injunctive relief is granted, banning unauthorized and unconsented egg sharing by defendants.

WHEREFORE RELIEF IS PRAYED FOR AS HEREINAFTER SET FORTH

### THIRD CAUSE OF ACTION: FRAUD

28. The allegations of paragraphs 1 through 27 are realleged and incorporated herein by reference. This cause of action is pled against each and every defendant.

29. From 1992 through 2003, defendants made certain representations to plaintiffs, which plaintiffs relied on to their detriment. These representations, which defendants knew to be false but which plaintiffs believed to be true, included, *inter alia,* promises that defendants would not share, sell, transfer, give away, donate, or otherwise transmit any of the plaintiff donors' eggs to any recipient person or entity, without getting the signed informed consent of the plaintiffs. Defendants promised that they would not engage in egg sharing with anyone, and would not give the plaintiffs' eggs to any recipients, without first informing the plaintiffs and getting their written and informed consent. Defendants also promised plaintiffs that they would honor the exclusivity of the egg donation process, as to allowing the donors to know about and approve the identity of any recipient of their eggs. These promises involved serious commitments to biological, medical and genetic ethics principles purportedly espoused by defendants, as stated in the guidelines and rules of defendants and as stated both verbally and in writing.

30. Plaintiffs relied on the misrepresentations of defendants from 1992 through the present, in that the donor plaintiffs donated their eggs and OPTIONS performed services matching donor and doctor and recipient, and such reliance was to the detriment of plaintiffs because the plaintiffs were defrauded by defendants, as defendants had no real intention of honoring their commitment to exclusivity and informed consent requirements.

31. As a proximate result of the actions of defendants, and each of them, plaintiffs have been damaged in that they have suffered emotional distress upon learning that their eggs were—or may have been--- "shared" and given away and/or sold by defendants, to unknown and unauthorized recipients, without their informed consent, in violation of the known and existing legal contracts. Plaintiffs have suffered general damages of pain and suffering and loss of reputation as well as specific medical damages caused by this. The class of egg donor plaintiffs have feared, *inter alia,* that their offspring may have increased risk of unknowingly engaging in incestuous relationships because of the actions of defendants.

32. As a proximate result of the actions of defendants, and each of them, plaintiffs have

been damaged in that OPTIONS has been driven out of business in 2003 and forced into bankruptcy in 2005, and has lost income in excess of $ 5 million because OPTIONS lost all of its referrals and lost revenues and lost doctors, donors and recipients and income.

33. Plaintiffs demand an award of reasonable attorney fees and costs per the contracts defendants registered physicians signed with OPTIONS.

34. There is no adequate remedy at law and irreparable damage will occur in the future unless injunctive relief is granted, banning unauthorized and unconsented egg sharing by defendants.

35. Defendants acted oppressively and in an outrageous manner and with reckless disregard for the rights and interests and health of plaintiffs, and plaintiffs deserve therefore to get an award of severe punitive damages against each defendant.

WHEREFORE RELIEF IS PRAYED FOR AS HEREINAFTER SET FORTH

**FOURTH CAUSE OF ACTION: CONVERSION**

**36.** The allegations of paragraphs 1 through 35 are realleged and incorporated herein by reference. This cause of action is pled against each and every defendant.

**37.** The actions of defendants, in transmitting and otherwise taking or sharing plaintiffs' eggs, without plaintiffs' informed consent, amounts to the tort of conversion of the plaintiff's own biological property,

**38.** As a proximate result of the actions of defendants, and each of them, plaintiffs have been damaged in that they have suffered emotional distress upon learning that their eggs were—or may have been--- "shared" and given away and/or sold by defendants, to unknown and unauthorized recipients, without their informed consent, in violation of the known and existing legal contracts. Plaintiffs have suffered general damages of pain and suffering and loss of reputation as well as specific medical damages caused by this. The class of egg donor plaintiffs have feared, *inter alia,* that their offspring may have increased risk of unknowingly engaging in incestuous relationships because of the actions of defendants.

39. As a proximate result of the actions of defendants, and each of them, plaintiffs have been damaged in that OPTIONS has been driven out of business in 2003 and forced into bankruptcy in 2005, and has lost income in excess of $ 5 million because OPTIONS lost all of its referrals and lost revenues and lost doctors, donors and recipients and income.

40. Plaintiffs demand an award of reasonable attorney fees and costs per the contracts defendants registered physicians signed with OPTIONS.

41. There is no adequate remedy at law and irreparable damage will occur in the future unless injunctive relief is granted, banning unauthorized and unconsented egg sharing by defendants.

42. Defendants acted oppressively and in an outrageous manner and with reckless disregard for the rights and interests and health of plaintiffs, and plaintiffs deserve therefore to get an award of severe punitive damages against each defendant.

WHEREFORE RELIEF IS PRAYED FOR AS HEREINAFTER SET FORTH

**PRAYER FOR RELIEF**

Plaintiffs each pray for relief from each defendant nd for esach cause of action as follows:

1. For an award of special damages, including lost income and medical costs and toehr costs, according to proof.
2. For an award of general damages for pain and suffering and loss of reputation
2. An award of punitive damages against each defendant
3. Injunctive relief banning unauthorized and unconsented-to egg sharing by defendants.
4. An award of reasonable attorney fees incurred in bringing this action.
5. An award of costs of suit.

Date Oct. 12, 2007

_____

STANLEY G HILTON, ATTORNEY FOR PLAINTIFFS

Complaint for Damages
OPTIONS VS. AMER SOC FOR REPRO MED, ET AL.

12